UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID G. ,

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

Case No. 2:18-cv-00587-TLF

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

David G. has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits. Plaintiff seeks reversal of the ALJ's decision and

requests that the Court remand for an award of benefits. The Court finds no error and affirms.

## I. Background

Plaintiff filed an application for a period of disability and disability insurance benefits in

April 2014. Dkt. 9, Administrative Record (AR) 31. Plaintiff alleged that his disability onset date

was July 29, 2013. *Id.* His claim was denied initially and on reconsideration. *Id.*

A hearing was held before an administrative law judge (ALJ) on December 14, 2015. AR

49-94. Plaintiff and a vocational expert appeared and testified. *Id.*

1    The ALJ determined that plaintiff suffers from the following severe impairments:

2    "degenerative joint disease of the left knee; status post-surgical repair for meniscal tear of the left

3    knee; degenerative disc disease of the lumbar spine; and obesity." AR 33.

4    The ALJ found that, even with the impairments and symptoms that were reflected in the

5    medical records and in testimony, plaintiff can perform certain types of "light" work, including

6    his past jobs as a postal clerk and data entry clerk. AR 42. The ALJ therefore found that plaintiff

7    is not disabled. *Id.* The Appeals Council denied plaintiff's request for review in March 2018,

8    making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff appealed that

9    decision with this Court. Dkt. 4.

10                      II.  Standard of Review and Scope of Review

11   The Commissioner employs a five-step "sequential evaluation process" to determine

12   whether a claimant is disabled. 20 C.F.R. § 404.1520. If the ALJ finds the claimant disabled or

13   not disabled at any step, the ALJ makes the disability determination at that step and the

14   sequential evaluation process ends. *See id.*

15   The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant

16   presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination

17   of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an

18   impairment that is listed in the regulations? (4) Does the claimant have residual functional

19   capacity (RFC), and if so, does this RFC show that the complainant would be able to perform

20   relevant work that he or she has done in the past? And (5) if the claimant cannot perform

21   previous work, are there significant numbers of jobs that exist in the national economy that the

22   complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec.

23   Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

24

25

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009-10 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.* at 1010.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.*; *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Revels*, 874 F.3d at 654. The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id.*

## III. Discussion

Plaintiff contends that the ALJ misapplied the law and lacked substantial evidence for her decision to deny benefits. Specifically, plaintiff argues that the ALJ erred by failing to conduct a sufficient analysis with respect to a listed impairment and failing to properly assess the opinion of an examining physician. These arguments are meritless, and the Court affirms for the following reasons.

1 A. Step Three Listing Determination

2      Plaintiff first contends the ALJ erred at step three of the sequential evaluation process.

3 Considering the record as a whole, plaintiff has not met his burden of demonstrating that his

4 impairments meet or equal the criteria of Listing 1.02, including the inability to ambulate

5 effectively. *Bowen v. Yuckert*, 482 U.S. 137, 145–52 (1987) (claimant bears burden of showing

6 impairment meets a Listing).

7      At step three, the ALJ must evaluate the claimant's impairments to decide whether they

8 meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P,

9 Appendix 1. 20 C.F.R § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If

10 they do, the claimant is deemed disabled. *Id.* The burden of proof is on the claimant to establish

11 he or she meets or equals any of the impairments in the listings. *Tackett*, 180 F.3d at 1098. "A

12 generalized assertion of functional problems is not enough to establish disability at step three."

13 *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

14      An ALJ "must evaluate the relevant evidence before concluding that a claimant's

15 impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th

16 Cir. 2001). An impairment meets a listed impairment "only when it manifests the specific

17 findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL

18 31248, at *2.

19      An impairment, or combination of impairments, equals a listed impairment "only if the

20 medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least

21 equivalent in severity to the set of medical findings for the listed impairment." *Pinto v.*

22 *Massanari*, 249 F.3d 840, 848 (9th Cir. 2001). "[S]ymptoms alone" will not justify a finding of

23 equivalence. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). The ALJ "is not required to discuss

24

25

1 the combined effects of a claimant's impairments or compare them to any listing in an

2 equivalency determination, unless the claimant presents evidence in an effort to establish

3 equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

4      Here, the ALJ found that the plaintiff does not have an impairment or combination of

5 impairments that meets or medically equals the severity of one of the listed impairments in 20

6 C.F.R. 404, Subpart P, Appendix 1. AR 35. The ALJ discussed listing 1.02. *Id.* She explained

7 that under that listing a claimant must prove an "'inability to ambulate effectively,'" defined as

8 > "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes
9 > very seriously with the individual's ability to independently initiate, sustain, or
> complete activities. Ineffective ambulation is defined generally as having
> insufficient lower extremity functioning (see 1.00J) to permit independent
10 > ambulation without use of a hand-held assistive device(s) that limits the
> functioning of both upper extremities."

11 AR 35-36 (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b)(1). Listing 1.00(J)(4)

12 states, "[t]he individual's ability to ambulate with and without [a hand-held assistive] device

13 provides information as to whether, or the extent to which, the individual is able to ambulate

14 without assistance."

15      The ALJ found that plaintiff does not meet listing 1.02 because he "has not been

16 prescribed an assistive device that requires the use of both upper extremities to operate." The

17 ALJ found that, instead, the record shows that plaintiff "does not rely on the use of an assistive

18 device at all." AR 36, 1464.

19      Plaintiff contends that the ALJ erred because "section 1.02 does not require the use of a

20 hand-held device." Dkt. 13, p. 7. He bases this argument on the use of the word "generally" in

21 the definition of "inability to ambulate effectively." He contends that the definition, and

22 examples provided in the regulation, show that a claimant can be unable to ambulate effectively

23 even if the claimant does not need an assistive device. *Id.*

24

25

1         Even if the ALJ overstated the importance of an assistive device in meeting listing 1.02,

2 however, any error would be harmless here. Plaintiff has not presented evidence that could meet

3 his burden of establishing that the regulatory definition of that phrase has been satisfied. *See*

4 *Tackett*, 180 F.3d at 1098-99 (claimant has burden of proof at steps one through four of

5 sequential disability evaluation process); *see also Lewis*, 236 F.3d at 514 (failure to discuss

6 combined effect of claimant's impairments was not error, as claimant failed to point to any

7 evidence to show his impairments combined to equal listed impairment).

8         Plaintiff cites no evidence that he meets Listing 1.02(A), and the record would not

9 support such an argument. *See* Dkt. 13, p. 5-7.

10         The regulatory definition of "inability to ambulate effectively" provides several

11 examples:

12         the inability to walk without the use of a walker, two crutches or two canes, the
inability to walk a block at a reasonable pace on rough or uneven surfaces, the

13         inability to use standard public transportation, the inability to carry out routine
ambulatory activities, such as shopping and banking, and the inability to climb a

14         few steps at a reasonable pace with the use of a single hand rail.

15 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b)(2).

16         The record does not indicate that plaintiff's situation resembles any of these examples.

17         First, the record indicates that plaintiff can walk without a walker, crutches, or canes. *See*

18 AR 629-30 ("He has no problem ambulating in and out of the office . . ."); *see also* AR 422, 629,

19 661, 823, 827, 845 (plaintiff consistently showed a normal gait); AR 64, 648 (plaintiff was able

20 to go to gym 3-4 times per week, though limited in some exercises); AR 1464 (plaintiff does not

21 use assistive devices). Examining physician Dan Phan, M.D., opined that plaintiff had no

22 limitation in standing and walking. AR 630. While plaintiff's medical record also contains

23 indications that he was having difficulty walking, these occurred well before the relevant period,

24

25

1  during a period when plaintiff was involved in several vehicle accidents. *See* AR 669, 676

2  ("ambulates slowly and bent forward," soon after January 2012 car accident); AR 893 (walks

3  slowly, April 2005).

4       Second, the record does not indicate that plaintiff would be unable to "walk a block at a

5  reasonable pace on rough or uneven surfaces." Listing 1.00(B)(2)(b)(2). Plaintiff testified that he

6  could walk continuously for 10-15 minutes at a "fairly level" grade. AR 74. Plaintiff also

7  reported after returning from Germany from December 2012 to September 2014 that "he and his

8  wife did a lot of walking" there. AR 836. This indicates he is able to walk at least one block "at a

9  reasonable pace on rough or uneven surfaces." Listing 1.00(B)(2)(b)(2).

10       Third, the record also indicates that plaintiff was not unable to take public transportation.

11  Rather, he reported taking the subway, streetcar, or bus "99 percent of the time" while living in

12  Germany. AR 81.

13       Fourth, the record indicates that plaintiff is capable of "routine ambulatory activities" like

14  shopping and banking: Plaintiff shops for groceries and clothes 2-3 times per week, goes to the

15  gym multiple times per week, traveled to Germany, drives several times per week, and attends

16  church and family events. AR 82-83, 204-05, 836. While such activities would not by themselves

17  preclude a finding of disability, they undermine plaintiff's implicit claim of an "extreme

18  limitation in the ability to walk" as listings 1.02 and 1.00(B)(2)(b) define it.

19       Finally, the record does not indicate plaintiff is unable "to climb a few steps at a

20  reasonable pace with the use of a single hand rail." Plaintiff indicated that he can go up and

21  down stairs, albeit with some pain. AR 69-70. When he was living in Germany, he was able to

22  climb five flights to reach his apartment. AR 81.

23

24

25

1  B. Medical Opinion Evidence

2      Plaintiff also contends that the ALJ failed to properly evaluate the medical evidence, and

3  specifically the opinion of an examining (or treating) physician, Mark Magdaleno, M.D. The

4  ALJ incorporated into the RFC all the work-related limitations found by Dr. Magdaleno, and

5  therefore the Court finds no reversible error.

6      Dr. Magdaleno examined plaintiff in August 2012, 11 months before the alleged onset

7  date. AR 1459. He interviewed plaintiff and tested his range of motion in the back and knees,

8  finding him to be limited in most areas. AR 1459-61, 1467-69. He found that plaintiff showed

9  "localized tenderness or pain to palpation for joints and/or soft tissue" in the back, but not in the

10  knees. AR 1461, 1469. He found that plaintiff showed symptoms of radiculopathy in his back.

11  AR 1463. He observed that plaintiff's posture was flexed forward due to back pain and he had an

12  antalgic gait. AR 1466. He found that plaintiff had a meniscal tear in the knee joint. AR 1473.

13  However, he noted that there was no diagnostic imaging of plaintiff's back or knees. AR 1465,

14  1472. He diagnosed plaintiff with degenerative disc disease of the lumbar spine and degenerative

15  joint disease of the left knee. AR 1466, 1473.

16      Dr. Magdaleno opined that plaintiff's back condition would have a "significant" impact

17  on his ability to work, noting that plaintiff "had pain and difficulty with all movements" during

18  the exam, including getting out of his chair and off the exam table. AR 1465-66. He added that

19  plaintiff "reports today was a significant flare but he is limited in walking, stand, sitting,

20  bending, lifting." *Id.* Dr. Magdaleno also opined that plaintiff's knee condition would "limit

21  walking and standing at times." AR 1473.

22      The ALJ gave "some weight" to Dr. Magdaleno's opinion. AR 41. The ALJ explained

23  that whether a claimant is able to work "is a legal issue reserved for the Commissioner." AR 41.

24

25

1   She noted that Dr. Magdaleno's treating relationship with plaintiff was "unclear," but that she

2   gave "some weight to his opinions on plaintiff's exertional and postural limitations. *Id.* She

3   found that while plaintiff showed limitations in the examination, he also reported that his

4   condition was having a "significant flare" that day. *Id*. Incorporating her prior discussion of the

5   record, the ALJ found that plaintiff's conditions cause some limitations, "but none more

6   restrictive than those reflected in the [RFC]." *Id.*

7        Plaintiff does not identify any specific limitations found by Dr. Magdaleno that the ALJ

8   failed to account for. Dr. Magdaleno opined that plaintiff's knee condition would "limit walking

9   and standing at times," and—while acknowledging the flare-up—that his back condition would

10  limit him in walking, stand, sitting, bending, and lifting. AR 1466, 1473. He did not identify any

11  specific limitations in those areas, such as frequency with which plaintiff could perform those

12  functions. In the RFC, the ALJ limited plaintiff to light work with additional restrictions

13  including only occasional climbing of ladders, ropes, and scaffolds, and occasional stooping,

14  kneeling, crouching, and crawling. AR 36. Because the RFC incorporated Dr. Magdaleno's

15  opinions, plaintiff has not shown any error in the ALJ's analysis. *See Turner v. Comm'r of Social*

16  *Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (rejecting plaintiff's challenge to analysis of

17  medical opinions because ALJ "incorporated [the doctor's] observations into [the claimant's]

18  residual functional capacity").

19        In addition, the ALJ was correct in noting that the issue of whether a plaintiff can work is

20  reserved to the Commissioner. *See McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011)

21  (disability determination is "for the Social Security Administration to make, not a physician.");

22  20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of an

23  opinion on issues reserved to the Commissioner.") (version effective before March 26, 2017).

24

25

1    Second, the ALJ appropriately considered that Dr. Magdaleno's examination happened

2    during a "significant flare" of plaintiff's symptoms. AR 41. Plaintiff does not point to any

3    evidence that his symptoms continued to flare, or of how often they did so, during the relevant

4    period.

5         Plaintiff's brief includes a separate section asserting that "the appeals council's decision

6    is not supported by substantial evidence." Dkt. 13, pp. 8-9. Yet this argument indicates that

7    plaintiff is contesting the ALJ's decision, not the appeals council's. *See id.* Plaintiff bases this

8    contention on the other errors argued in his brief. The Court declines to address this cursory

9    argument. *See Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir.

10   2003) (declining to review issues not "argued specifically and distinctly in a party's opening

11   brief").

12   C. Failure to Reopen Prior Adjudication Period

13        Plaintiff contends the ALJ erred in not handling his application as if the plaintiff

14   implicitly requested that she reopen the prior adjudication period. Dkt. 13, p. 9. If the ALJ had

15   done so, plaintiff argues, the disability period at issue would have started several years earlier

16   and the ALJ would have given more weight to evidence from the earlier period. *Id.*

17        The ALJ observed that plaintiff had previously filed a disability application, which was

18   denied on July 29, 2013. AR 31. Plaintiff did not appeal that decision in the required time, and

19   the decision was therefore administratively final. *Id.*

20        An ALJ's decision not to reopen a prior claim is a determination is "purely discretionary"

21   and not a "final decision" under 42 U.S.C. § 405(g). *Davis v. Schweiker*, 665 F.2d 934, 935 (9th

22   Cir. 1982). The exception to this rule—when the Commissioner considers the issue of a

23   plaintiff's disability during the already-adjudicated period "on the merits"—does not apply here.

24

25

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 10

*See Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001). Accordingly, plaintiff does not identify a reversible error in the ALJ's failure to reopen the prior adjudication.

IV.  Conclusion

Based on the foregoing discussion, the undersigned finds no error in the ALJ's determination that plaintiff was not disabled. Defendant's decision to deny benefits is therefore AFFIRMED.

Dated this 17th day of April, 2019.

Theresa L. Fricke
United States Magistrate Judge